Slip Op. 07 - 54

UNITED STATES COURT OF INTERNATIONAL TRADE

- - - - - - - - - - - - - - - - - - -X
MUSGRAVE PENCIL CO., INC. *et al.*,
                                        :
                        Plaintiffs,
                                        :
            v.
                                        :
UNITED STATES,                          Court No. 05-00491
                                        :
                        Defendant,
            -and-                       :

CHINA FIRST PENCIL CO., LTD. *et al.*,  :

            Intervenor-Defendants.    :
- - - - - - - - - - - - - - - - - - -X

Memorandum & Order

[Plaintiffs' motion for judgment upon the
 agency record denied; action dismissed.]


                        Decided:  April 5, 2007

    Neville Peterson LLP (George W. Thompson and Catherine
Chess Chen) for the plaintiffs.

    Peter D. Keisler, Assistant Attorney General; Jeanne E.
Davidson, Director, Patricia M. McCarthy, Assistant Director,
Commercial Litigation Branch, Civil Division, U.S. Department of
Justice (Michael D. Panzera); and Office of the Chief Counsel
for Import Administration, U.S. Department of Commerce (Kemba T.
Eneas), of counsel, for the defendant.

    deKieffer & Horgan (John J. Kenkel and Gregory S. Menegaz) for
intervenor-defendant Shandong Rongxin Import & Export Co., Ltd.

    Lafave & Sailer LLP (Francis J. Sailer) for intervenor-
defendants China First Pencil Co., Ltd.; Orient International
Holding Shanghai Foreign Trade Corp.; and Shanghai Three Star
Stationery Industry Co., Ltd.

        AQUILINO, Senior Judge:  Plaintiffs' concise complaint

in this action is that the International Trade Administration,

U.S. Department of Commerce ("ITA") did not rely on the best surrogate data for manufacturer's overhead, general expenses, and profit in rendering its Certain Cased Pencils from the People's Republic of China; Final Results and Partial Rescission of Antidumping Duty Administrative Review, 70 Fed.Reg. 42,301 (July 22, 2005), as amended, 70 Fed.Reg. 51,337 (Aug. 30, 2005). They seek relief from this determination made pursuant to 19 U.S.C. §1675(a) via a USCIT Rule 56.2 motion for judgment upon the administrative record compiled by the agency in connection therewith.

The court's subject-matter jurisdiction is predicated upon 28 U.S.C. §§ 1581(c), 2631(c).

I

As indicated, the country of origin of the merchandise that is subject to the ITA's underlying antidumping-duty order, 59 Fed.Reg. 66,909 (Dec. 28, 1994), is the People's Republic of China ("PRC"), which the ITA still considers to be a "nonmarket economy country"[1] ("NME") within the meaning of the Trade

---

[1] The statute defines this term, in general, to mean any foreign country that the ITA determines does not operate on market principles of cost or pricing structures, so that sales of merchandise in such country do not reflect the fair value of the merchandise. See 19 U.S.C. §1677(18)(A).

Agreements Act of 1979, as amended, 19 U.S.C. §1677(18).
Compare, e.g., Notice of Final Determination of Sales at Less
Than Fair Value: Certain Cased Pencils From the People's
Republic of China, 59 Fed.Reg. 55,625 (Nov. 8, 1994), with Gov't
of the People's Republic of China v. United States, 31 CIT ___,
Slip Op. 07-50 (March 29, 2007).

        To determine whether subject merchandise is being, or
is likely to be, sold in the United States at less than fair
value, the agency must make "a fair comparison . . . between the
export price or constructed export price and normal value."  19
U.S.C. §1677b(a).  When that merchandise emanates from an NME,
however, the actual export price is often not a valid source of
comparison due to the nature of such a country.  Whereupon the
ITA, in general, is to

        determine the normal value of the subject merchandise
        on the basis of the value of the factors of production
        utilized in producing the merchandise and to which
        shall be added an amount for general expenses and
        profit plus the cost of containers, coverings, and
        other expenses.  . . . [T]he valuation of the factors
        of production shall be based on the best available
        information regarding the values of such factors in a
        market economy country or countries considered to be
        appropriate by [it].

19 U.S.C. §1677b(c)(1).

A

Pursuant to formal requests, the agency commenced an administrative review of its antidumping-duty order covering certain PRC cased pencils.  The preliminary results thereof were published in 70 Fed.Reg. 2,115, 2,118 (Jan. 12, 2005), wherein the ITA "determined that India is comparable to the PRC in terms of *per capita* gross national product and the national distribution of labor" and also that "India is a significant producer of comparable merchandise."

The preliminary results made clear that where Indian surrogate-value information was available, it was preferred. Where such data were "unable" to be used, Indonesian, Philippine, and U.S. values were considered, in part upon a finding that the Philippines is "also comparable to the PRC in terms of *per capita* gross national product and the national distribution of labor, and . . . [is a] significant producer[] of comparable merchandise."  70 Fed.Reg. at 2,118.  And those results of the administrative review preliminarily

> derived ratios for factory overhead, selling, general and administrative [] expenses, and profit using the financial statements of Asia Wood International Corporation (Asia Wood), a wood-products producer in the Philippines.

Id. at 2,119.  That is, the ITA found Asia Wood's information to be the best from which to derive those ratios.

Interested parties may submit publicly-available information to value labor, manufacturing overhead, general expenses, and profit within 20 days after the date of publication of the preliminary results of an administrative review conducted pursuant to 19 U.S.C. §1675.  See 19 C.F.R. §§ 351.301(c)(3)(ii), 351.408(c).  The domestic producers cum plaintiffs herein submitted information for some nine Indian producers of wooden bedroom furniture, data from which had been used by the ITA in its Final Determination of Sales at Less Than Fair Value; Wooden Bedroom Furniture From the People's Republic of China, 69 Fed.Reg. 67,313 (Nov. 17, 2004).  See Appendix to Plaintiffs' Motion for Judgment, Attachment 2, which included the Department's Financial Ratio Memorandum, company-specific ratios for each of the nine Indian producers, and, in addition, copies of financial statements for seven of the companies.  The information supplied concerned the surrogate valuation of manufacturing overhead, general expenses and profit relied on by the ITA in its investigation of the pricing of PRC wooden bedroom furniture.  Plaintiffs' proffered data purported to be

coincident with the period of review and from companies that use wood as a major component in producing merchandise.

Interested parties also have 30 days after the date of publication of the preliminary results to submit a "case brief" to the ITA to be considered in the determination of the final results of an administrative review.   See 19 C.F.R. §351.309. The plaintiffs apparently filed such a brief, arguing that "the Department in the final results should use the financial ratio data from *Wooden Bedroom Furniture*", declaring them to be "more comprehensive and more reliable" than that from Asia Wood, which was used in the preliminary results.   See Appendix to Plaintiffs' Motion for Judgment, Attachment 3 (Issues and Decision Memorandum for the 2002-03 Antidumping Duty Administrative Review: Certain Cased Pencils from the People's Republic of China, p. 17 (July 11, 2005)).

PRC exporters, intervenor-defendants at bar, submitted a rebuttal brief that challenged the representation that "furniture manufacturing involves precisely the same production processes used in pencil production", claiming that such a comparison "is akin to saying that bicycle production is like automobile manufacturing."   Appendix to Plaintiffs' Motion for

Judgment, Attachment 7, p. 3.  They argued for the use of Asia

Wood's  financial  statements  chiefly  because  they  "cover  a

producer  of  comparable  merchandise,  a  fatal  infirmity  that

infects the possible use of the furniture producers' financial

statements."  Id.

        The ITA rejected plaintiffs' proposed approach.  See

Decision Memorandum, p. 19.

                            II

        That  determination  will  be  sustained  if  it  is

supported by substantial evidence on the record and otherwise in

accordance  with  law.   See  19  U.S.C.  §1516a(b)(1)(B)(i).

Substantial  evidence  is  "such  relevant  evidence  as  a  reasonable

mind  might  accept  as  adequate  to  support  a  conclusion."

Consolidated  Edison  Co.  v.  NLRB,  305  U.S.  197,  229  (1938);

Shanghai  Foreign  Trade  Enterprises  Co.  v.  United  States,  28  CIT

___, ___ , 318 F.Supp.2d 1339, 1345 (2004).

        As recited above, the agency must value the factors of

production based on the best available information regarding the

values of such factors in a market economy country or countries

considered  to  be  appropriate  by  it.   According  to  19  U.S.C.

§1677b(c)(4), in doing so, the ITA

shall utilize, to the extent possible, the prices or costs of factors of production in one or more market economy countries that are—

(A) at a level of economic development comparable to that of the nonmarket economy country, and
(B) significant producers of comparable merchandise.

Although "comparable merchandise" is not defined by this statute, the agency has "considered whether products have similar physical characteristics, end uses, and production processes." Issues and Decision Memorandum for the Administrative Review of Certain Cased Pencils from the People's Republic of China; Final Results, p. 17 (July 16, 2002), citing its Glycine from the People's Republic of China: Final Results of New Shipper Administrative Review, 66 Fed.Reg. 8,383 (Jan. 31, 2001), and accompanying Issues and Decision Memorandum at Comment 7; and its Notice of Final Determination of Sales at Less Than Fair Value: Beryllium Metal and High Beryllium Alloys From the Republic of Kazakstan, 62 Fed.Reg. 2,648 (Jan. 17, 1997).

In determining the valuation of the factors of production, the critical question is whether the methodology used by the ITA is based on the best available information and

establishes antidumping margins as accurately as possible.
Shakeproof Assembly Components, Div. of Ill. Tool Works, Inc. v.
United States, 268 F.3d 1376, 1382 (Fed.Cir. 2001).  And agency
determinations will be affirmed so long as they are "reasonable
and supported by the record as a whole, even if there is some
evidence that detracts from the [ITA]'s conclusions."  Olympia
Indus., Inc. v. United States, 22 CIT 387, 389, 7 F.Supp.2d 997,
1000 (1998), citing Atlantic Sugar, Ltd. v. United States, 744
F.2d 1556, 1563 (Fed.Cir. 1984).

A

The ITA released its Decision Memorandum herein on
July 11, 2005.  It summarized the arguments and then concluded
that Asia Wood's financial statements are the best information,
to wit:

> . . . We based our determination on the fact that Asia
> Wood produces a variety of simple wood products
> similar to pencils in terms of physical character-
> istics, using production processes comparable to those
> used to produce pencils.  In addition, the Asia Wood
> financial statements are producer-specific data that
> are more specific to the subject merchandise than the
> industry-wide data, and thus, are more likely to
> approximate respondents' actual experience.  Further-
> more, the 2003 Asia Wood financial ratios are
> contemporaneous with the POR, and continuing to use
> Asia Wood's data is consistent with what has been done
> in prior segments of this proceeding.

<u>Decision Memorandum</u>, p. 19.   The plaintiffs appeal this conclusion, claiming that the agency neither evaluated the Indian data in accordance with the comparability-of-merchandise test applied in its preceding 2002 <u>Final Results</u> or with any other cognizable standard.[2]  Whereupon they pray for a remand

> so that, at the very least, Commerce can demonstrate
> . . . that it did not summarily reject the Indian data
> in contravention of *Olympia*.

Plaintiffs' Memorandum in Reply, p. 6  n. 5.

(1)

        While the <u>Decision Memorandum</u> does not address similarity in end use of the products, the lack of comparison of cased pencils with either furniture or handicrafts is not necessarily a fatal flaw.   <u>See</u>, <u>e.g</u>., <u>Wheatland Tube Co. v. United States</u>, 161 F.3d 1365, 1370 (Fed.Cir. 1998)(while not directly explaining a minor issue, the ITA's decisional path is "readily apparent").   Indeed, neither side contends, nor could it, that the surrogates' respective products have more similar end uses to cased pencils than the other.

---

        [2] <u>See</u> <u>generally</u> Plaintiffs' Memorandum, pp. 10-26.   The quality of this written submission, and of those on behalf of the other parties, has obviated the need for oral argument. Hence, plaintiffs' motion therefor can be, and it hereby is, denied.

The Decision Memorandum does conclude that "Asia Wood produces a variety of simple wood products similar to pencils in terms of physical characteristics, using production processes comparable to those used to produce pencils."  This is preceded by assertions that

> Asia Wood produces a variety of wood products, including furniture, but that it also produces wood products that are more simple in nature and more comparable to the pencil production of the [PRC exporters[3]]

and that

> the financial data of Asia Wood relate to the production of woodworks and crafts and products such as furniture, doors, cabinets, handicrafts, etc., which is more comparable to that of the production of pencils than the financial data of furniture producers whose production activities include beds, tables, dressers, armoires, and chests of drawers.

Decision Memorandum, p. 19.


                                III

On the record presented, the court cannot conclude that this approach was not in accordance with law or supported by substantial evidence.  Plaintiffs' motion for remand of this

---

[3] Decision Memorandum, p. 18.

matter on the concise issue raised therefore cannot be granted.

Judgment of dismissal will enter accordingly.

          So ordered.

Decided:  New York, New York
          April 5, 2007


                              /s/ Thomas J, Aquilino, Jr.__
                                   Senior Judge

J U D G M E N T

UNITED STATES COURT OF INTERNATIONAL TRADE

Thomas J. Aquilino, Jr., Senior Judge

```
- - - - - - - - - - - - - - - - - - -X
MUSGRAVE PENCIL CO., INC. et al.,
                                    :
                    Plaintiffs,
                                    :
            v.                          Court No. 05-00491
                                    :
UNITED STATES,                      :

                    Defendant.  :
- - - - - - - - - - - - - - - - - - -X
```

This action having been duly submitted for decision; and the court, after due deliberation, having rendered a decision herein; Now therefore, in conformity with said decision, it is

ORDERED, ADJUDGED and DECREED that plaintiffs' motion for judgment on the agency record be, and it hereby is, denied; and it is further hereby

ORDERED, ADJUDGED and DECREED that this action be, and it hereby is, dismissed.

Dated: New York, New York
       April 5, 2007

                          /s/ Thomas J. Aquilino, Jr.   ___
                              Senior Judge

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____       By: _____
                                                      Deputy Clerk